UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBOYACIAN, *et al.*, | Civ. No. 9-5143 |
| Plaintiffs, | |
| | OPINION |
| v. | |
| | HON. WILLIAM J. MARTINI |
| BP PRODUCTS NORTH AMERICA, INC., | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

      This matter come before the Court on Defendant's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the Complaint for failure to state a claim upon which relief may be granted. For the reasons stated below, the Court will grant the motion in part and dismiss Counts Two, Five, Six, Seven, Eight, and Ten of the Complaint. And the Court will dismiss the remaining Counts for lack of ripeness.

    I.      **Factual and Procedural Background**

      Defendant BP Products North America, Inc. ("BP") is a refiner and marketer of gasoline and other petroleum products. The Plaintiffs operate BP service stations throughout New Jersey pursuant to the Commissioner Marketer Agreement ("CMA"). This Court has previously recognized that the CMA creates a legal franchise under the New Jersey Franchise Practices Act, N.J.S.A. § 56:10-1, *et seq.*, ("NJFPA"), between BP and the signatory, *see, e.g.*, *Sarwari v. BP Products North America, Inc.*, 2007 WL 1118344 (D.N.J. Apr. 9, 2007), and the parties do not contest that issue. Under the CMA, a franchisee does not purchase the BP fuel they dispense; rather, BP provides the fuel and the franchisee earns a commission on each gallon sold. In the present cases, the Plaintiffs also leased their respective service stations from BP pursuant to certain lease agreements. The CMA at issue in this case explicitly provides that the agreement lasts for a term of four years, and also explicitly provides that the franchisee shall have the option of renewing the agreement for two additional terms of four years each. At various

1

points after September 2006, the Plaintiffs and BP executed various CMA renewal agreements that extended the franchises for four years (collectively with the CMA and the lease agreements, the "Franchise Agreements").

In August 2009, BP informed the Plaintiffs that it intended to withdraw from the CMAs at the expiration of the term of each individual agreement. As an alternative, BP offered all of the Plaintiffs the opportunity to purchase their service stations and act as dealers who purchased fuel products directly from BP and then sold them to customers – an arrangement BP refers to as Dealer Owned Dealer Operated stations. BP also offered the alternative of becoming Company Owned Dealer Operated stations, where BP would still own the service station property. Under either alternative, a franchise relationship likely would no longer exist under the NJFPA. *See Sarwari v. BP Products North America, Inc.*, No. 06-2976, 2007 WL 1118344, at * (D.N.J. filed Sept. 15, 2006) (preliminarily enjoining BP from changing nature of business arrangement with New Jersey franchisees).

On August 18, 2009, BP filed a complaint against Hillside Service, Inc., Mike Yigitkuri, and Vinod Oberoi seeking a declaration from this Court that it has no obligation to continue business with the defendants, that it is not obligated to renew the underlying CMAs, and that it is not responsible for any claimed lost value of the defendants' businesses (the "Hillside Action"). On October 7, 2009, Ara Alboyacian, Mike Agolia, Ared Anac, Hagop Baga, Edward Balloutine, David Chong, Sevan Curukcu, Alfred Deppe, Joseph Klein, Raffi Korogluyan, Paul Lopes, Mary Lou Lopes, Abraham Manjikian, Imad Saleh, Walter Steele, Jayed Suddal, Aret Tokatlioglu, Richard Walter, Gregory Yigitkurt, Mike Yigitkurt, and Sahin Yigitkurt, (collectively, the "Franchisees") filed the present action against BP seeking, among other relief, a declaration that BP's failure to renew the underlying CMAs would constitute a violation of the NJFPA (the "Alboyacian Action"). The Alboyacian Action also stated nine other causes of action.The parties subsequently moved for summary judgment on the issue of whether the terminations would violate the NJFPA in both cases, and BP also filed a motion to dismiss in the Alboyacian Action seeking to dismiss that complaint in its entirety. After an attempt at mediation failed, this Court found that the terminations would violate the NJFPA, and the Court granted summary judgment against BP in both cases, thereby dismissing the Hillside Action in its entirety. *BP Products North America , Inc. v. Hillside Service, Inc.*, Nos. 9-4210, 9-5143, 2011 WL 4343452 (D.N.J. Sept. 14, 2011).

The Court now construes BP's motion to dismiss in this, the Alboyacian Action, as to the nine remaining counts of the Franchisees' complaint.

## II.  Legal Analysis

### A. Ripeness

This Court has an obligation to determine its own subject-matter jurisdiction *sua sponte*. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388-89 (3d Cir. 2002). This includes an obligation to address Article III standing issues, including ripeness, where such issues exist. *Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 433 (3d Cir. 2003). The purpose of the ripeness doctrine is to determine whether a party has brought an action prematurely, and it counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine. *Id.* A dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated or may not occur at all. *Wyatt, Virgin Islands, Inc.*, 385 F.3d 801, 806.

To the extent that the ripeness of any of the Franchisees' claims is contingent upon BP actually terminating any of the Franchises, those claims are unripe because no terminations have yet occurred, and, indeed the terminations may not occur at all. This is especially true in light of this Court's prior opinion resolving the motions for summary judgment.

Counts Three, Four, and Nine rely on the termination occurring in order for them to be ripe, and so the Court must dismiss them. Count Three alleges BP fraudulently induced the Franchisees into renewing their CMA agreements by making oral and written representations signaling its intent to renew the franchises beyond the renewal periods specifically provided in the franchise agreements. Count Four alleges a claim against BP for negligent misrepresentation based on the same conduct, and Count Nine alleges a claim for equitable estoppel based on the same conduct. With regards to each Count, this Court sees no basis for harm unless the intended termination occurs. As alleged, the harm arises because the Franchisees invested in their franchises assuming the franchise-relationship would continue. If it continues, the Franchisees' will be in the exact same position they had believed they were in when they made those investments. Thus, the Court will dismiss Counts Three, Four, and Nine,[1] without prejudice, as unripe, because their justiciability rests on contingent future events which may not occur as anticipated.

---

[1] To the extent that Count Nine seeks specific performance or an injunction forcing BP to continue the franchise relationship, such relief is not available to the Franchisees. Though it is a proper remedy in many equitable estoppel actions, specific performance, by definition, does not apply to create new contractual rights; rather, specific performance only encompasses performance of contractual duties. *See* Restatement (Second) of Contracts § 357 (1981). And the Court, having ruled that the intended terminations would violate the NJFPA, does not see a basis for injunctive relief. Assuming BP terminates and the Franchisees succeed on their claim under a theory of equitable estoppel, no irreparable harm will have occurred as monetary damages could adequately compensate the Franchisees for any losses. *See, e.g.*, *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004).

### B. Motion to Dismiss Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

### C. Count One: Violation of the NJFPA

This Court's prior decision on the motions for summary judgment resolved Count One, and so the Court will not revisit that Count here. *BP Products North America , Inc., 2011 WL 4343452 at \*4-5*. There were no ripeness concerns as to that Count because the Franchisees were seeking declaratory relief. For the purposes of declaratory relief, an actual controversy existed that was sufficient for this Court to exercise jurisdiction over the dispute.

### D. Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

"A covenant of good faith and fair dealing is implied in every contract in New Jersey" – including franchise agreements. *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). The Franchisees allege that BP violated the implied covenant by: (1) indicating an intent to terminate the franchise agreement; (2) failing to advise the Franchisees of its intent to abandon the franchises before

4

accepting the benefit of the Franchisees' continued investments in their business; (3) failing to disclose its intent to "circumvent" the *Sarwari* ruling and thereby leading the Franchisees to believe the franchise relationship would continue; (4) providing the Franchisees with "unrealistic" purchase options for post-termination in constructive violation of the NJFPA; and (5) "circumventing the letter and spirit" of the *Sarwari* ruling by requiring the Franchisees to meet "unreasonable" conditions of performance.

     BP argues that the Franchisees cannot succeed as a matter of law on their claims for breach of the implied covenant of good faith and fair dealing because its actions and intended actions would not prevent them from receiving their reasonably expected fruits under the contract. BP is correct. Here, the Franchisees have failed to allege with any specificity how the alleged failures to disclose have prevented them from enjoying any fruits of the franchise agreement. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001); *Sons of Thunder, Inc. v. Borden, Inc*. 148 N.J. 396, 420 (1997). While the Franchisees are correct that the exercise of a contractual right may lead to a breach of the implied covenant, *see id.*, that argument misses the mark. It is the NJFPA – not the contracts at issue – that prevents BP from terminating the franchise relationship without paying just compensation where the franchisees are substantially complying with the franchise agreement. Indeed, the contracts at issue implicitly contemplate that the franchise relationships would end after a set date, and only the NJFPA prevents that termination. The expected continuation of the franchise is not a fruit of the contract, but a fruit of the NJFPA. And the Franchisees have not alleged or explained how anything in the NJFPA, the Franchise Agreements, or the implied covenant created any duties of disclosure that BP violated. As such, none of the alleged breaching conduct destroys any fruits of the underlying contracts and the Plaintiffs' claim for breach of the implied covenant cannot succeed. Similarly, any alleged obligations arising from the NJFPA or the "letter and spirit" of *Sarwari* are not fruits of the contract such that they would give rise to actionable conduct under the breach of the implied covenant doctrine. And so the Court will dismiss Count Two.

     E.  <u>Counts Five and Six: Tortious Interference</u>

     The Franchisees allege that BP tortuously interfered with their contracts with third parties and with their prospective economic advantages by determining to terminate the franchises and by subjecting the Franchisees to onerous standards of performance. BP argues that Franchisees' claims for tortious interference must fail because the factual allegations, even if taken as true, are insufficient to support a finding of malice. Again, BP is correct.

Malice is an element of a prima facie case for a cause of action for tortious interference, regardless of whether the allegations are interference with an economic advantage or with an existing contract. *Luso*, 2009 WL 1873583, at *6 (citing cases). "Malice is not used here in its literal sense to mean 'ill will;' rather, it means that harm was inflicted intentionally and without justification or excuse." *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1170 (N.J. 2001). "The conduct must be both injurious and transgressive of generally accepted standards of common morality or of law." *Id.* at 1170-71. "The line clearly is drawn at conduct that is fraudulent, dishonest, or illegal." *Id.* at 1170.

Here, even assuming the allegations of the Complaint are true, BP's conduct cannot be characterized as malicious under this standard. True, BP's allegations could support a finding of ill will, but this is insufficient. There are no allegations even suggesting that BP has engaged in fraudulent, dishonest, or illegal activity with respect to either the decision to terminate the franchises or the decision to shift certain responsibilities of performance onto the franchise owners. Whether these decisions violate the NJFPA does not matter, as the Franchisees have failed to allege specific facts tending to show that BP has done anything than argue in good faith that the decisions do not violate the act. And allegations that these actions are disadvantageous to the Franchisees and advantageous to BP are similarly insufficient – actions taken for business reasons are not unjustified. Thus, the Court will dismiss Counts Five and Six.

### F.  Count Seven: Unjust Enrichment

"To establish a claim for unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (quotation omitted). The plaintiff must also "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* The key here is the phrase "beyond its contractual rights." Where a contractual agreement already binds the parties to certain courses of conduct, the defendant might accept plaintiff's performance as part of that agreement. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co. of North America*, 158 A.2d 825, 828 (N.J. 1960) (finding no basis for quasi-contractual liability where insurance agreement governed parties' performance).

The Franchisees argue that they invested time, money, and resources to market and sell BP's products, thereby unjustly enriching BP; this argument makes little sense. In fact, the allegations of the Complaint, read in coordination with the Franchise Agreements, suggest only that the Franchisees investments were in line

with the terms of the agreements, and that any benefit BP received was – justly – part of its contractual rights. *See also Luso*, 2009 WL 1873583, at *6. Thus, the Court will dismiss Count Seven.

### G. Count Eight: Quantum Meruit

The Franchisees also allege that BP is liable under a theory of quantum meruit because, in making these investments to their businesses, they expected reasonable compensation. BP argues that any claim sounding in quantum meruit must fail because a valid agreement existed governing the parties' relationship. Again, BP is correct.

The theory of quantum meruit liability arises as an alternative to a breach of contract action. Where a plaintiff is unable to prove the existence of a valid, enforceable agreement, the plaintiff may instead attempt to collect compensation for its services under quantum meruit. *See Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285-86 (N.J. 1992) (finding that no enforceable agreement existed but allowing plaintiff to proceed under theory of quantum meruit). The goal of such quasi-contract recovery is to bring justice to the parties without reference to their intentions. *Id.* (quotations omitted).

Here, the intentions of the parties are clear because they entered binding, agreements governing their relationships. Neither party has challenged the enforceability of those agreements. And while the mere existence of a contract may not be sufficient to defeat a claim for quantum meruit, the Franchisees have failed to allege that they engaged in any activity above and beyond what was required of them as part of those contracts; rather, it appears as though the Franchisees have merely performed their contractual duties.[2] And if the Franchisees felt as though BP had not adequately performed under the Franchise agreements, the appropriate cause of action would be for breach of contract; they cannot succeed on a claim under the doctrine of quantum meruit. *See, e.g.*, *Blue Sky MLS, Inc. v. RSG Systems, LLC*, No. 00-3832, 2002 WL 1065873, at *7 (D.N.J. Mar. 28, 2002) (dismissing quantum meruit claim "to the extent it seeks to recover for work performed by RSG that was contemplated" by enforceable agreements between the parties).

---

[2] Even assuming that the value of BP's franchise and good-will were increased by the Franchisees, this hardly seems like something that is outside the realm of the Franchise Agreements. Indeed, such benefits flow naturally from the franchise relationship to both the franchisor and the franchisee over the course of the franchise agreement. *See, e.g.*, *Neptune T.V. & Appliance Service, Inc. v. Litton Microwave Cooking Products Div.*, 462 A.2d 595, 600 (N.J. Super. A.D. 1983) (discussing mutual benefits of franchise relationship). And while a franchisee is especially vulnerable to the loss of goodwill that accompanies termination, the Court does not see how that gives rise to an action under the doctrine of quantum meruit. Fortunately for franchisees in this state, the NJFPA provides protection from such losses. *Id.* at 600-01.

For all these reasons, the Court will dismiss Count Eight.

### H. Count Ten: Unconscionability

Finally, the Franchisees allege that the Franchise Agreements are unconscionable contracts of adhesion. But they also, somewhat confusingly, request as relief that the Court enjoin BP from terminating the franchises established by those agreements. BP argues that the Franchisees have failed to establish that unconscionability is actually a cause of action that a plaintiff may bring in the affirmative. The Franchisees have conceded as much in their opposition brief. As such, the Court will dismiss Count Ten.

## III. Conclusion

For the foregoing reasons, the Court will grant BP's motion to dismiss. And the Court will dismiss Counts Two, Five, Six, Seven, Eight, and Ten of the Complaint with prejudice. The Court will also dismiss Counts Three, Four, and Nine without prejudice as unripe. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**