UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALBOYACIAN**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**BP PRODUCTS NORTH AMERICA, INC.**,<br><br>Defendant. | Civ. No. 9-5143<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

This matter comes before the Court on Plaintiffs' motion for fees, Defendant's motion to dismiss Plaintiffs' remaining claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defendant's motion to condition voluntary dismissal of Plaintiffs' remaining claim on an award of attorney's fees to Defendant pursuant to Federal Rule of Civil Procedure 41(a).

For the reasons discussed below, the Court will **GRANT** Plaintiffs' motion **IN PART** and will award fees and costs in an amount to be determined. The Court will also **DENY** Defendant's motion to impose conditions on Plaintiffs' voluntary dismissal of their remaining claim. The Court will take no action on Defendant's motion to dismiss, as the parties have represented that this case has settled.

### I.    Factual and Procedural Background

Defendant BP Products North America, Inc. ("BP") is a refiner and marketer of gasoline and other petroleum products. Plaintiffs Ara Alboyacian, Mike Agolia, Ared Anac, Hagop Baga, Edward Balloutine, David Chong, Sevan Curukcu, Alfred Deppe, Joseph Klein, Raffi Korogluyan, Paul Lopes, Mary Lou Lopes, Abraham Manjikian, Imad Saleh, Walter Steele, Jayed Suddal, Aret Tokatlioglu, Richard Walter, Gregory Yigitkurt, Mike Yigitkurt, and Sahin Yigitkurt are franchisees that operate BP service stations throughout New Jersey pursuant to the Commissioner Marketer Agreement ("CMA"). This Court has previously recognized that the CMA creates a legal franchise under the New Jersey Franchises Practices Act, N.J.S.A. 56:10-1, *et seq.* (the "NJFPA"), between BP and the signatory. *See, e.g.*, *Sarwari v. BP Products North America, Inc.*, No. 06-2976,

1

2007 WL 1118344 (D.N.J. Apr. 9, 2007). On August 18, 2009, BP filed a complaint against Hillside Service, Inc., Mike Yigitkuri, and Vinod Oberoi (the "Hillside Defendants"), seeking a declaration from this Court that it has no obligation to continue business with the Hillside Defendants, that it is not obligated to renew the underlying CMAs, and that it is not responsible for any claimed lost value of the Hillside Defendants' business (the "Hillside Action"). On October 7, 2009, Plaintiffs filed this lawsuit seeking, among other relief, a declaration that BP's failure to renew the underlying CMAs would constitute a violation of the NJFPA.

Thereafter, BP moved for summary judgment in the Hillside Action and filed a Rule 12(b)(6) motion in this action. Plaintiffs filed a motion for partial summary judgment in this action seeking judgment solely on the issue of whether BP's failure to renew would violate the NJFPA. The Court subsequently granted summary judgment for the Hillside Defendants in the Hillside Action and partial summary judgment for Plaintiffs in this action. The Court also granted BP's motion to dismiss and dismissed nearly all of Plaintiffs' remaining claims.

The only claim that remains in this action is whether BP imposed unreasonable standards of performance on Plaintiffs in violation of the NJFPA. BP filed the pending Rule 12(b)(6) motion to dismiss that claim on February 23, 2012. Thereafter, counsel for the parties met several times to discuss settlement, and the Court, on counsel's request, refrained from deciding the motion pending the outcome of those discussions. On July 26, 2012, the parties notified the Court that they had reached a settlement on the remaining claim but still disputed the issue of attorney's fees. As part of the settlement, counsel represented that Plaintiffs would file a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a) once the Court resolved the fee dispute. The parties filed their pending fee motions on August 1, 2012. On August 14, 2012, the parties completed briefing the motions.

## II.   Legal Analysis

### A. Voluntary Dismissal Under Rule 41(a)

BP asks the Court to condition Plaintiffs' voluntary dismissal of their remaining claims on an award of attorney's fees for BP. In the alternative, BP asks the Court to award BP attorney's fees for the time its counsel expended in briefing its pending motion to dismiss. The Court cannot grant either request.

Federal Rule of Civil Procedure 41(a) provides that a plaintiff may voluntarily dismiss an action "without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." "A filing under the Rule is a notice, not a motion. Its effect is

automatic: the defendant does not file a response, and no order of the district court is needed to end the action." *In re Bath and Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 166 (3d Cir. 2008).

BP argues that the Court has the authority to impose conditions on any voluntary dismissal under Rule 41(a) because Plaintiff's actions have required them to defend against a meritless claim. But Rule 41 "affixes a bright-line test to limit the right of dismissal to the early stages of litigation" – the only question the Court should ask here is whether BP "has served either an answer or a summary judgment motion". *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1065 (3d Cir. 1987) (quotation omitted). Here, BP has filed neither an answer nor a motion for summary judgment. And contrary to BP's claims, the Court did not treat its earlier motion to dismiss as a motion for summary judgment. *See* ECF No. 39, at 4 (describing motion to dismiss standard). Nor does *Plaintiffs'* filing of a motion for partial summary judgment drag the litigation across the bright line Rule 41(a)(1) creates. The Rule explicitly allows for voluntary dismissal by notice before "the *opposing party* serves either an answer or a motion for summary judgment." (emphasis added). BP presents no authority for reading the rule other than in this plain fashion.[1] And the fact that BP filed a motion for summary judgment in the Hillside Action has no bearing on this action.[2] Plaintiffs' remaining claim in this action was not even an issue in the Hillside Action.

In the alternative, BP argues that even if Plaintiffs can voluntarily dismiss their action without approval from the Court or the imposition of conditions, the Court should grant BP an award of attorney's fees in connection with its motion to dismiss Plaintiffs' remaining claim. BP is correct that voluntary dismissal of an action pursuant to Rule 41(a) likely would not deprive this Court of jurisdiction to enter an award of attorney's fees, *see, e.g.*, *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 98 (3d Cir. 2008), but BP does not provide a basis for an award of fees other than Rule 41 and general equitable considerations. The Court cannot square the idea of awarding fees under Rule 41 with its finding that it lacks the authority to set conditions on Plaintiffs' voluntary dismissal, and BP does not provide any

---

[1] Even if the Court were to ignore the bright-line test of Rule 41(a)(1), this action did not progress past the early stages of litigation. There are no discovery orders in this case, nor did any of the parties' briefs regarding the motion for partial summary judgment rely heavily on facts that could only be gleaned after expensive investigation. Instead, the parties relied on declarations and the operative agreements governing the franchise relationship. The Court even recognized in its summary judgment opinion that the NJFPA matter raised in the motions merely asked the Court to address questions of law. *See* ECF. No. 37, at 3. Thus, an award of fees to compensate BP for defending a drawn-out litigation that ended in no resolution is not appropriate.

[2] BP correctly notes that the Court posted one opinion to both the docket from this action and the docket from the Hillside Action with regards to the parties' motions for summary judgment on their declaratory relief claims. ECF No. 37. But the Court did so as a matter of expediency and to avoid confusion among the parties. As the Court noted in that opinion, the actions were never consolidated. *Id.* at 1.

case law support for its position. Nor does the Court find that equity compels an award of fees.

For all of these reasons, the Court will deny BP's motion to set conditions on Plaintiffs' voluntary dismissal or to independently award BP attorney's fees.

### B. Plaintiffs' Entitlement to Costs and Fees

BP argues that because it did not actually violate the act, Plaintiffs are not entitled to fees under the NJFPA. BP is correct that the Court did not find BP violated the Act but merely declared that BP's proposed non-renewal of the CMAs *would* constitute a violation of the Act. The Court disagrees.

The statute at issue here is N.J.S.A. 56:10-10:

> Any franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief. Such franchisee, if successful, shall also be entitled to the costs of the action including but not limited to reasonable attorney's fees.

N.J.S.A. 56:10-10 does two things: one, by its first sentence it creates a private right of action; and two, by its second sentence it creates an entitlement to fees and costs for successful franchises. The second sentence of the statute plainly limits collection of attorney's fees to "successful" franchisees, but does not explicitly define who is a "successful" franchisee. BP argues that the first sentence of the statute limits the definition of "successful" franchisees to franchisees that have shown the franchisor actually violated the NJFPA. This is a fundamental misreading of the statute and is contrary to the intent behind the NJFPA, as recognized by the courts.

Divining the proper meaning of a "successful" franchisee is easy. The phrase "[s]uch franchisee" at the beginning of the second sentence clearly indicates that the "franchisee" from the second sentence is the same franchisee who sued for a violation of the Act pursuant to the cause of action created in the first sentence. Thus, a plain reading of the statute allows that a "successful" franchisee is a franchisee that is successful in *any* action he brought pursuant to the private right of action created in the first sentence of the statute. Had the New Jersey legislature wished to limit the definition of "successful" in the second sentence to those claims showing an actual violation, as BP claims, it could have done so by drafting the second sentence to read: "Such franchisee, if successful *in proving a violation*, shall also be entitled . . ."

4

This leads to the question of what kinds of actions N.J.S.A. 56:10-10 allows. The first sentence clearly limits suits to actions "for violation of this act". The question then becomes whether the phrase means "for an *actual* violation of" the NJFPA, as BP claims, or whether it is broad enough to encompass an action "to *prevent* a violation of" the Act. Importantly, N.J.S.A. 56:10-10 provides two forms of relief: damages and an injunction. Examination of the allowance of injunctive relief is key. Under BP's interpretation of the statute, the phrase "for violation of" would limit actions for injunctive relief to actions in which the franchisor has already committed a violation and the franchisee is seeking to prevent further violations or is seeking a return to the pre-violation status quo. Logically, in many cases a franchisee would likely wish to seek an injunction under this statute to *prevent* a violation from occurring. Under BP's interpretation, such suits would not be allowed.

BP has not cited a single case that supports such a narrow interpretation of N.J.S.A. 56:10-10; indeed, the case law suggests otherwise. Courts have routinely accepted actions seeking injunctions to *prevent* an alleged violation from occurring under this statute. *See, e.g.*, *Westfield Centre Service, Inc. v. Cities Service Oil Co.*, 432 A.2d 48, 50-51 (N.J. 1981) (lawsuit by franchisor seeking to prevent sale of franchise property that would result in termination of franchise); *VW Credit, Inc. v. Coast Automotive Group, Ltd.*, 787 A.2d 951, 956-57 (N.J. Super. A.D. 2002) (affirming injunction preventing termination of franchise); *Simmons v. General Motors Corp., Oldsmobile Division*, 435 A.2d 1167 (N.J. Super. A.D. 1981) (lawsuit by franchisor seeking to prevent termination of franchise). And in those cases, the courts have awarded fees to successful franchisors, despite the fact that no actual violation has been proven. *See, e.g.*, *Westfield*, 432 A.2d at 58 (upholding award of attorney's fees and costs for successful injunction). This interpretation – that the NJFPA allows for actions to prevent violations and awards for attorney's fees when the franchisor is successful in such actions – squares with the requirement of New Jersey law that "remedial statutes must be construed broadly to give effect to their legislative purpose." *See Liberty Lincoln-Mercury v. Ford Motor Co.*, 134 F.3d 557, 566 (3d Cir. 1998) (citations omitted).

In sum, the Court finds that Plaintiffs are successful franchisees under the NJFPA because they have successfully sued to prevent a violation of the Act. They are accordingly entitled to reasonable fees and costs.

### C. Reasonable Fees and Costs

An award of fees and costs under N.J.S.A. 56:10-10 includes "reasonable attorney's fees . . . and those costs that have been traditionally included as reasonable out-of-pocket expenses incurred by the attorney that are normally

charged to a fee-paying client, such as photocopying, paralegal expenses, travel and telephone costs, and the like." *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc.*, 975 A.2d 510, 522-23 (N.J. Super. A.D. 2009).

In fixing what constitutes a reasonable fee, the Court finds the jurisprudence relating to the lodestar method be useful. A reasonable fee is one "adequate to attract competent counsel, but which does not produce windfalls to attorneys." *Public Interest Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) (quotation omitted). The lodestar method "yields a fee that is presumptively sufficient to achieve this objective." *Perdue v. Kenny A.* ex rel. *Winn*, 130 S. Ct. 1662, 1672 (2010) (quotation omitted). The lodestar method is a determination of the appropriate billing rate for the party's attorneys and the number of hours those attorneys reasonably spent working on the case. *Interfaith Community Organization v. Honeywell Intern., Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). "A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable" and must submit evidence to support its arguments. *Id.* An opposing party must object with sufficient specificity to any request for fees. *Id.* Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable. *Id.* "In reviewing a fee application, a district court must conduct 'a thorough and searching analysis.'" *Id.* (quoting *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001)).

A plaintiff need not prevail on every contention raised in a lawsuit in order to collect attorney's fees for his counsel's efforts. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1982); *see also Blum v. Witco Chemical Corp.*, 829 F.2d 367, 378 (3d Cir. 1987) (holding district court did not abuse its discretion in awarding fees for hours billed in connection with unsuccessful motions and depositions not used at trial). But the Court recognizes that N.J.S.A. 56:10-10 is not necessarily as generous with regards to unsuccessful claims as federal fee-shifting statutes. As one lower court recognized in *Westfield*, "[w]here a substantial portion of the time spent by counsel was devoted to issues which were abandoned or which were adversely resolved on the merits, the award [under N.J.S.A. 56:10-10] must reflect such factors." *Westfield Centre Service, Inc. v. Cities Service Oil Co.*, 411 A.2d 714, 718 (N.J. Super. A.D. 1980) *aff'd* 432 A.2d 48 (N.J. 1981).

In support of their fee application, Plaintiffs have submitted the sworn Declaration of Marc J. Gross, lead counsel for Plaintiffs. Attached to Mr. Gross's declaration are monthly billing statement for work performed from October 2009 until September of 2011, when the Court found for Plaintiffs on their motion for

6

partial summary judgment. The billing statements are addressed to Plaintiffs[3] and contained entries for fees that list the date of the services provided, a description of the services, the billers, the hours expended, and the total cost of the services. The bills also contained detailed descriptions of what disbursements, if any, counsel incurred that month. The disbursements include filing fees, computer research costs, photocopying expenses, postage fees, and related out-of-pocket expenses. Plaintiffs request a total award of $173,213.38, comprised of $160,436.00 in fees and $12,777.38 in costs and expenses. Mr. Gross's declaration also swears that the fees and expenses are only approximately 70% of the total fees and expenses his firm billed during this time period; not included in the application are an additional $64,073.50 in fees and $5,476.02 in expenses counsel swears were billed for work expended on legal issues apart from the successful NJFPA claim. Nor does the application include any legal fees or expenses billed after the Court's September 14, 2011 opinion granting partial summary judgment.

BP's objects to Plaintiffs' fee application primarily on the ground that Plaintiffs have failed to adduce sufficient evidence linking all of the fees requested to their actual success on the merits.[4] BP points out that Plaintiffs' complaint contained ten counts – nine of which the Court dismissed. BP also points out that even Plaintiffs' success on Count One, on which the Court granted Plaintiffs' partial summary judgment, was limited: Count One contained both the request for declaratory judgment, which the Court ordered, and Plaintiffs' remaining claim for unreasonable standards of performance on which the Court has yet to rule. BP argues that the billing statements are insufficiently detailed for the Court to assess how much time was spent on which the one successful claim.

The Court agrees. While Plaintiffs are entitled to an award of reasonable attorney's fees in connection with its partial success on Count One of its complaint, it is not entitled to an award for fees spent on all other litigation in this matter under the NJFPA, as its claims have either been dismissed or have not yet been adjudicated. The Court thus finds that counsel's billing rates – to which Defendant did not object – are reasonable, but that the Court lacks sufficient information from which it can determine whether the hours spent are reasonable and sufficiently related to Plaintiffs' success.

### III.    Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to condition voluntary dismissal in full and **GRANTS** Plaintiffs' motions for fees **IN**

---

[3] Despite BP's contentions otherwise, the fee application does not appear to include any work billed on the Hillside Action and none of the bills is addressed to any of the Hillside Defendants.

[4] The Court finds BP's other arguments, *e.g.*, that the work is duplicative of work from prior lawsuits or that equity requires a reduced fee, unconvincing and insufficiently supported to sway the Court's decision.

**PART** and will award an amount to be determined. Plaintiffs will submit a revised attorney certification including only those fees, costs, and expenses relating to: (1) the drafting and filing of the complaint; and (2) the drafting and filing of Plaintiffs' motion for partial summary judgment and the briefs and other documents supporting that motion. The Court will use this information in fixing a final fee award. An appropriate order follows.[5]

           /s/ William J. Martini
    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 5, 2012**

---

[5] The Court also expects that Plaintiffs will file their Rule 41 notice promptly based on the representation of counsel.